## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**United States of America,**

    Plaintiff,

        v.

**Harold Esquilin-Montañez [2], James Stewart-Carrasquillo [3],**

    Defendants.

CRIMINAL NO. 16-796 (PG)

### ORDER

Pending before the court is the defendants Harold Esquilin-Montañez and James Stewart-Carrasquillo's motion to dismiss the indictment for loss or destruction of, and failure to produce exculpatory evidence (Docket No. 161), and the United States' opposition thereto (Docket No. 165). After holding a hearing and carefully considering the parties' arguments, the court **DENIES** the defendants' motion (Docket No. 161) for the reasons explained below.

### I. BACKGROUND

On December 12, 2016, the United States (or the "government") filed a criminal complaint against the defendants, Harold Esquilin-Montanez and James Stewart-Carrasquillo, who were thereafter indicted by a grand jury for conspiring to possess with intent to distribute five (5) kilograms or more of cocaine onboard a vessel, in violation of 46 U.S.C. § 70503(a)(1), § 70506(b), and 21 U.S.C. § 841.[1] See Docket No. 27.

According to the defendants, on December 10, 2016, they trailered Carrasquillo-Soto's fishing vessel to a beach in Naguabo, Puerto Rico, and embarked on a fishing expedition. On their way to the island of Culebra, Puerto Rico, the defendants stopped to drop several lobster traps onto the sea for later retrieval. It was then that the defendants came across multiple bales floating on the surface of the sea. According to the complaint, defendant Esquilin suspected the bales contained cocaine and so told his co-defendants. See Docket No. 1-1 at 3-4. From this point forward, the defendants' versions of

---

[1] Count One of the indictment includes the "onboard a vessel subject to the jurisdiction of the United States" element of 46 U.S.C. § 70503(a)(1) (also known as the Maritime Drug Law Enforcement Act (MDLEA)). Count Two, on the other hand, includes the conspiracy offense under § 70506(b) of the MDLEA. Finally, Count Three contains the possession/distribution offense of 21 U.S.C. § 841. See Docket No. 27.

Juan Carrasquillo-Soto was also arrested, charged and indicted along with the above-captioned defendants. The instant opinion only concerns Esquilin and Stewart, who appear as defendants two and three of the indictment, respectively. See Docket No. 27. The court may, however, mention Carrasquillo-Soto when setting forth the facts relevant to the matter at hand.

the facts vary.[2] Suffice it to state that the bales were brought on board the vessel, notwithstanding Esquilin's and Stewart's alleged objections.

Later that day, PRPD officers from the Ceiba Marine Unit ("MU") patrolling the vicinities of Piñero Island observed a fishing vessel heading towards the main island. When the officers approached the vessel to investigate, they saw three men dump several bales onto the water. The MU detained the vessel, where they found multiple bales containing 500 bricks of a substance that yielded positive for cocaine. The officers thus arrested and transported the defendants to the MU Station in Ceiba for further inspection. On that same date, special agents from the Department of Homeland Security Investigation ("HSI") took custody of the seized vessel and the items found inside. See Docket Nos. 161-3 and 161-4.

To date, Esquilin and Stewart have all but wavered their respective claims of innocence. They maintain that a legitimate fishing venture was their only motive for accompanying Carrasquillo on his boat on the day of their arrest, and that Carrasquillo alone located and placed the bales on board. To that end, the defense sought a maritime expert to inspect a "Fish Finder" device used by the defendants on December 10, 2016, to place and later locate the lobster traps at sea. This particular Fish Finder's built-in GPS technology stored the coordinates where the lobster traps were placed. Consequently, the defendants claim that the information stored in the device, if extracted, would constitute "further evidence of the defendants' version of events." Docket No. 161 at 6; see also Transcript of Motion Hearing ("Transcript") held on June 28, 2017, at 11:25 and 12:1-2. However, both the prosecution and the defense acknowledge that the device has since disappeared.[3] See Docket Nos. 161 and 165; see also Transcript at 15-17.

## II.  DISCUSSION

The defendants now request dismissal of the indictment arguing that the loss or destruction of the evidence stored in the Fish Finder –to which they attach clear exculpatory value- constitutes a due process violation under Brady v. Maryland, 373 U.S. 83, 87 (1963) (holding that the government has a duty to disclose exculpatory evidence which is "material either to guilt or to punishment."). The government, on the other hand, asserts that their motion must

---

[2] The court is of course aware that the facts relevant to the charged offenses must be proven by the government at trial. We must nevertheless turn to the "facts" known or alleged thus far in order to provide the reader with contextual guidance.

[3] The record contains no evidence whatsoever about the Fish Finder's whereabouts after HSI turned the vessel over to the manager of Villa Marina in Fajardo, Puerto Rico, a government-contracted storage facility.

be denied insofar as the defendants have failed to demonstrate the clear, or even potential exculpatory value of any evidence that could be retrieved from that device. See Docket No. 165.

### A. The Exculpatory Value

At the outset, the United States has argued that the defendants' reliance on Brady is misguided in light of their allegation that the sough-after evidence has been lost or destroyed. See Brady, 373 U.S. at 87 (holding that the government has a duty to disclose exculpatory evidence which is "material either to guilt or to punishment."). The record here lacks any indication that the evidence in question has been destroyed. And although the parties' theories and explanations about the Fish Finder's whereabouts have been inconsistent and unclear, the court concurs with the government.

Because this is a missing evidence case, the defendants must satisfy a three-part test to demonstrate a due process violation due to the government's failure to preserve evidence. See Arizona v. Youngblood, 488 U.S. 51 (1988); California v. Trombetta, 467 U.S. 479, 488-89 (1984); United States v. Garza, 435 F.3d 75 (1st Cir. 2006). First, "[t]he 'missing evidence' must possess an exculpatory value that was apparent before the evidence was destroyed'…." United States v. Marshall, 109 F.3d 94, 98 (1st Cir. 1997) (quoting Trombetta, 467 U.S. at 489). Second, that evidence "must be of such nature that the defendant[s] would be unable to obtain comparable evidence by other reasonably available means." Id. Finally, if the evidence is deemed to be only potentially exculpatory, the defendants must show bad faith. See Garza, 435 F.3d at 75 (citing Youngblood, 488 U.S. 51, 58 (1988)).

Here, the defense has repeatedly asserted that the Fish Finder evidence would "corroborate" the fact that Esquilin and Stewart embarked on a fishing trip and never expected nor intended to participate in a drug-trafficking venture. As the government points out, even if such evidence were found, it would hardly exculpate them from the offense charged. See Docket No. 161 at 2-3; see also Transcript at 15:4-11. Providing the location of the lobster traps could be persuasive -let us assume convincing- evidence that the defendants hoped to hit the seafood jackpot that day and decidedly dropped the traps onto the ocean. But it could hardly prove their unwilling or unknowing involvement in the salvage and transportation of $10 million worth of floating cocaine. See id.

At best, that evidence would provide a tangential portent of corroboration to the defendants' accounts. In this regard, the court finds that the evidence

lacks any apparently exculpatory value. Moreover, the defendants have failed to establish the absence of comparable evidence with which to demonstrate their innocence. See Trombetta, 467 U.S. at 488-89. Esquilin and Stewart claim that they are now left only with the prospect of taking the stand. Their own testimony, they argue, is not comparable evidence because the government will characterize it as self-serving. It would also be subject to impeachment. Both points are unavailing. See Casiano-Jimenez v. United States, 817 F.3d 816, 822 (1st Cir. 2016) (quoting Owens v. United States, 483 F.3d 48, 59 (1st Cir. 2007) (reiterating that "[a] defendant's testimony as to non-involvement should not be disregarded lightly").

### B. Bad Faith

At this juncture, the defendants' only shot at success depends on whether or not they can demonstrate that the Fish Finder evidence was at least "potentially useful." See Olszewski v. Spencer, 466 F.3d 47, 55-57 (1st Cir. 2006). Under this prong, "the presence or absence of bad faith by government will be dispositive." See United States v. Femia, 9 F.3d 990, 993-94 (1st Cir. 1993). The United States argues that the defendants in the instant case have failed to present evidence of bad faith, and thus, cannot meet this prong. Tellingly, at the motion hearing counsel for defendant Stewart stated:

> [I]n this case…it is very difficult for me to allege bad faith on the part of the Government, and I don't believe that I need to reach that position because I think that the exculpatory nature of this evidence is clearly evident.

Transcript at 8:1-5. Relying on that assertion, the prosecution later suggested that the actions taken by the government with respect to the property seized from defendants could amount to negligence, "potentially [] gross negligence." Transcript at 16:1-4. The court most certainly agrees. However, where the lost or destroyed evidence is only potentially exculpatory, the standard requires a showing of bad faith, not negligence. See Femia, 9 F.3d at 995 (holding that the "district court clearly erred in finding a due process violation because [the evidence] was destroyed to the government's gross negligence, not bad faith").

Here, the defendants have only pointed to the property receipts signed by the PRPD, HSI and the property manager at Villa Marina as evidence of the government's mishandling of the evidence. See Docket Nos. 161-3-161-5. After careful consideration, the court finds that these documents only show that the Fish Finder was itemized (or accounted for) on the days of, and following the

defendants' arrest. That evidence does not, however, contain any specific details regarding the Fish Finder's disposal.[4] In short, the court finds that the defendants' assertions of bad faith are speculative at best. This will not suffice.

### III.  CONCLUSION

In light of the foregoing, the court concludes that the defendants have failed to make any of the necessary showings, as to either materiality or bad faith, to establish a due process violation due to the loss or destruction of the Fish Finder evidence. It is worth noting that other courts have considered similar arguments in MDLEA cases where the defendants have alleged due process violations due to the actual sinking of their vessels by the government, and faced with markedly stronger showings of materiality of lost evidence on board those vessels, have rejected such claims. See United States v. Wilchcombe, 838 F.3d 1179, 1191-92 (11th Cir. 2016) (rejecting argument that government violated due process by destroying boat without photographing center console in which defendant allegedly had been hiding as a stowaway, where "[n]othing in the record suggests that the Coast Guard, in destroying the boat without photographing it…, acted in bad faith…. Such a typical and reasonable law enforcement decision about how to allocate limited resources and manpower does not permit an inference of bad faith."); United States v. Revolorio-Ramo, 468 F.3d 771, 774 (11th Cir. 2006) (no due process violation in government's sinking of vessel containing commercial fishing equipment and supplies, where (inter alia) exculpatory value of such evidence was limited to argument "that appellants were hapless fishermen unknowingly ensnared in a multinational drug running operation").

For the reasons explained above, the court **DENIES** the defendants' motion to dismiss the indictment (Docket No. 165).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, July 24, 2017.

S/ JUAN M. PÉREZ-GIMÉNEZ<br>
<b>JUAN M. PEREZ-GIMENEZ</b><br>
<b>SENIOR U.S. DISTRICT JUDGE</b>

---

[4] In fact, the record is not even clear on whether the law enforcement agents involved in the inspection and handling of the property ever removed the Fish Finder from the center console of the vessel. See e.g. Transcript at 16:17-25.